**UNITED STATES of America, Plaintiff,**

**Charlie Ridley, et al.,
Plaintiff–Intervenors,**

v.

**STATE OF GEORGIA, et al. (Grady, Hart, Irwin, Jasper, Macon, Mitchell, Monroe, Morgan, and Peach Counties), Defendants.**

**Civ A. No. 2771–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 12, 1989.

Norman Chachkin, NAACP–Legal Defense and Education Fund, New York City, Thomas M. Jackson, Macon, Ga., for plaintiff-intervenor.

Michael J. Bowers, Atty. Gen., State of Ga., Atlanta, Ga., for defendant State of Ga.

Pauline Miller, Nathaniel Douglas, Civil Rights Div., Dept. of Justice, Washington, D.C., for U.S.

Charles R. Adams, Jr., Ft. Valley, Ga., for Peach County.

W. Edward Meeks, Jr., Ocilla, Ga., for Irwin County.

Thomas Ledford, Camilla, Ga., for Mitchell County.

W. Ashley Hawkins, Forsyth, Ga., for Monroe County.

Thomas L. Lehman, Cairo, Ga., for Grady County.

Walter S. Chew, Jr., Oglethorpe, Ga., for Macon County.

E.R. Lambert, Madison, Ga., for Morgan County.

Roy R. Kelly, Monticello, Ga., for Jasper County.

Phillip L. Hartley, Harben & Hartley, Gainesville, Ga., for Hart County.

## ORDER

OWENS, Chief Judge.

In August of 1969 and in reliance upon the Fourteenth Amendment to the United States Constitution and Title IV of the Civil Rights Act of 1964, the United States as plaintiff initiated this action against the State of Georgia, *et al.*, to desegregate numerous Georgia school districts. Shortly thereafter, Charlie Ridley, *et al.*, were permitted to intervene in this matter as plaintiff-intervenors,[1] and they have remained involved during the long history of this case. Among other things, this case resulted in the issuance of a consent order in 1974 which imposed a permanent injunction upon the school boards of Grady, Hart, Irwin, Jasper, Macon, Mitchell, Monroe, Morgan, and Peach Counties. *See United States v. State of Georgia*, 691 F.Supp. 1440 (M.D.Ga.1988) (order contains relevant portions of the 1974 consent order).

After many years of relative inactivity, the above-referenced action is before the court on the United States' motion to ascertain whether the nine school districts have achieved "unitary status." If the court determines that some or all of these school districts have achieved unitary status, an assumption which the United States seems inclined to make but a fact which this court is not yet prepared to find, then the United States further asks that this court dismiss

this case so far as it concerns those school districts which have achieved such status.

The nine school districts originally joined the United States in motions "to have this case dismissed since these parties agree that defendants have achieved and maintained a unitary status in all respects for several years...." Motions to have stipulation approved, p. 1.[2] Plaintiff-intervenors, however, refused to stipulate that any of the above-named school districts had achieved unitary status. Similarly, all of the school districts have retreated from their earlier position, and they have joined the plaintiff-intervenors in requesting that this court instead dismiss the case without resolving the issue of unitary status and retain in effect the permanent injunction mandating the desegregation along with that injunction's implementing and enforcing mechanisms. Such action would both remove the case from the government's files and retain in force the benefits included in existing court orders. In its place, the government has expressed its concern about the validity of a dismissal without a finding of unitary status [3], and it has questioned the authority of this court to dismiss the case while retaining in effect the permanent injunction.[4]

In a previous order, this court summed up the situation as follows:

> Viewed overall, in spite of the agreement of plaintiff-intervenors and these inactive defendant school boards to dismiss this school desegregation civil action leaving the 1974 permanent injunction in effect and in spite of the fact that

---

1. *See United States v. State of Georgia*, 428 F.2d 377 (5th Cir.1970).

2. The record contains nine such motions, one for each of the nine school districts. *See* Docket Entries Nos. 11, 12, 14–18, 28–30.

3. In *Pitts v. Freeman*, 755 F.2d 1423, 1426 (11th Cir.1985), the Eleventh Circuit said that to conclude a school desegregation case, a district court must first determine if the school district has achieved unitary status. *See infra* n. 5.

4. Though this case has yet to require a determination of that question, the court notes that the Eleventh Circuit stated in *United States v. Board of Education of Jackson County*, 794 F.2d 1541, 1543 (11th Cir.1986) as follows:

[t]hat school districts have become unitary, however, does not require the courts to vacate the orders upon which the parties have relied in reaching that state.... In some situations, such orders make possible the long term commitment needed to start the desegregation process.... Equitable solutions would be very difficult to obtain in future cases because parties would be unable to rely on the court's word.

(citation omitted). *Compare Lee v. Macon County Board of Education*, 681 F.Supp. 730, 738 (N.D.Ala.1988) (*Jackson* cannot be construed to invite or command indefinite district court involvement once the declaration of unitary status has led to a dismissal of the action).

neither the plaintiff-intervenors nor any defendant school board desires this court to determine whether or not either of the defendant school systems has achieved unitary status, the United States as plaintiff-movant continues to insist that this court has the duty and responsibility of determining whether or not each defendant school system has achieved unitary status. The fact that the extensive discovery and evidentiary hearing required for such a determination will cause each of these small county school boards to collect taxes from their local property owners to pay necessary attorneys fees and litigation expenses, seems to be of no concern to the United States, but, of course, is the paramount concern of each of these school boards to whom this is an unnecessary exercise.

*United States v. State of Georgia,* 691 F.Supp. at 1444.

In light of the situation as described above, this court recognized the propriety of determining at some point the issue of unitary status[5] but ruled that the costs of such a determination should be borne by the plaintiff United States. The court stated as follows:

> [I]n this court's best judgment the United States, as plaintiff, has the right to move this court for a finding of unitary status as to each of these school systems, provided that as the moving party it assumes the entire burden of proving —factually and legally—that each school system is in a unitary status. The entire burden includes the responsibility of representing each school board without expense to the school board in all discovery, pretrial and trial matters, so long as each school board does not desire, at its own expense, to be represented by its own counsel. Any other approach would be inequitable to these innocent bystander school boards.

*Id.* at 1444. Consequently, the court ordered plaintiff United States to inform the court within sixty days whether it agreed to proceed under the court's proposal. *Id.* at 1445.

Plaintiff United States responded by letter dated October 21, 1988, a copy of which is attached as an appendix, and therein the United States agreed to shoulder certain of the defendant school districts' costs. This response, however, illuminates the fact that the United States' position in this matter is riddled with inherent conflicts. Based upon the voluminous reports which these school districts have filed over the years, the United States has "determined" that these school districts have reached unitary status. Thus, the government has moved for a judicial finding to that effect and requested the dismissal of this case and the vacation of the existing injunction. The government has become the unasked for and seemingly unwanted surrogate for the defendant school districts, a surrogate that in good faith and in an attempt to comply with this court's directive has agreed to pay a large portion of the defendants' costs. But the United States is the plaintiff in this case. The United States initiated this action to correct past wrongs, and in this court's best judgment, the government continues to have an obligation both to the minority children and to the quality of education in these nine counties. That responsibility is recognized in the government's letter of October 21, in which the government states:

> We also stress, however, that as lawyers for the United States we can represent only the United States. Accordingly, if in the course of attempting to demonstrate that a particular school district

---

**5.** The Eleventh Circuit has explained the procedure which a district court should follow when the achievement of "unitary status" is at issue.

District courts must retain jurisdiction over such cases to insure not only the implementation of the desegregation plan but also "the achievement of the ultimate goal—a unitary school system in which the State does not discriminate between public school children on the basis of race." In order to conclude a school desegregation case, a district court must hold a hearing to determine if the school system indeed has achieved unitary status. The plaintiffs should receive notice of the hearing's purpose, and the hearing should give them an opportunity to show why the court should continue to retain jurisdiction. *Pitts v. Freeman,* 755 F.2d 1423, 1426 (11th Cir. 1985) (citations omitted).

has achieved unitary status, we determine that it has not, then we will cease to seek unitary status, and indeed will seek instead to reactivate the case to achieve additional relief, as is necessary. As we have repeatedly pointed out in our earlier filings, while we think the law requires dismissal once unitary status *has* been achieved, we do not wish to see any school district released from judicial supervision that has *not* achieved unitary status.

(emphasis in original).

This court agrees with the government's above recognition that the United States' function in this proceeding is to investigate thoroughly the conduct of the nine defendant school districts and to represent zealously those interests which it first undertook to represent nearly twenty years ago.[6] After such investigation, and after sharing gathered information with and conferring with fellow plaintiffs, intervenors Charles Ridley, *et al.*, the United States is, of course, free to take a position on the question of the unitary status of any of the defendant school districts.[7] This court is not implying that the government should take an unyielding adversarial position nor is it encouraging the government to litigate needlessly. The court is merely requiring that the government fulfill its obligation to the children of the nine counties in question. With this obligation in mind, to permit the government to initiate this time-consuming and expensive process presuming at the outset one thing—that the defendants have achieved unitary status— only to be prepared to change horses in the middle of the stream is to invite confusion and to risk injustice.

In conclusion, this court determines that plaintiff United States can make and has made a proper motion to bring before the court the issue of the unitary status of the nine defendant school districts. The facts

leading to the resolution of that issue can best be ascertained through the thorough investigation and complete airing of views which are the hallmarks of the adversarial process. Thus, this court accepts the government's proposal in so far as that proposal offers to shoulder the identified costs of the defendant school districts. This court also accepts the government's offer to coordinate the investigation in the interests of efficiency and economy. In addition, the court directs the government to cooperate with and share information with plaintiff-intervenors. In the same spirit of cooperation, the court encourages plaintiff-intervenors to cooperate with both the government and the defendant school districts and to recognize, if true and when established, the unitary status of some or all of the defendant school districts. This case is about the education of children and the return to local communities of the responsibility for such education. Let that fact rather than any desire to clear cluttered files guide each of the parties in this case.

The motion to enter an order of dismissal is hereby DENIED, and the case shall proceed in accordance with the above discussion.

SO ORDERED.

### APPENDIX

U.S. Department of Justice

Civil Rights Division
*Deputy Assistant Attorney General*

*Washington, D.C. 20530*

*Oct. 21, 1988*

Honorable Wilbur D. Owens, Jr.

United States District Chief Judge

Middle District of Georgia

---

6. The United States has not asked to be realigned in this action as a party defendant, and this court believes that such realignment should not occur.

7. The court notes that the Eleventh Circuit cases place on plaintiffs, and thus on the government, the burden of producing evidence to show why

the court should continue to retain jurisdiction. *See State Conference of Branches of NAACP v. State of Georgia,* 775 F.2d 1403, 1414 (11th Cir. 1985); *Pitts v. Freeman,* 755 F.2d 1423, 1426 (11th Cir.1985). This court will not allow, nor does the court believe that the government intends, the abdication of that responsibility.

3rd & Mulberry Street

Macon, Georgia 31202

Re: *United States and Ridley v. State of Georgia (Grady, Hart, Irwin, Jasper, Macon, Mitchell, Monroe, Morgan, and Peach Counties), C.A. No. 2771–MAC (WDO) (M.D.Ga.)*

Dear Chief Judge Owens:

The Department of Justice has carefully reviewed the Court's August 24, 1988, order in the above case. We are pleased that the court adopts the view that the United States is entitled to a determination concerning the unitary status of the respective school districts. The United States has strong reservations, however, regarding the Court's requirement that it undertake the representation, and assume all the attendant costs, of the defendant school districts. Nonetheless, given the procedural posture of this issue and in the interest of resolving as soon as possible this matter which probably should have been resolved years ago, the United States is prepared to proceed with this action as outlined below, preserving our objection in the event of an appeal. We believe the approach we propose is consistent with the Court's order.

Where the school district declines to participate, we will assume the burden of developing the record on which a final determination of unitary status can be made, and we will assume at the outset the burden of defending the proposition that each school district in this case has achieved unitary status. Accordingly, we will also assume the costs incurred by each school district in producing and filing the evidence before the Court necessary for carrying these burdens. In particular, consistent with the Court's directive, the United States will assume all reasonable costs associated with retrieving requisite information and preparing responses to interrogatories, and will prepare and pay for all necessary filings and motions, as needed to make the showings necessary for a determination of unitary status. Of course, we do not read the Court's order as requiring us to pay defendants' attorney fees or private plaintiffs' costs or fees, and if the United States ultimately prevails, we reserve the litigant's usual right to recover appropriate costs from our opponents; moreover, if it appears that our opponents' position was frivolous, we reserve the right to request attorney fees as well.

We also stress, however, that as lawyers for the United States we can represent only the United States. Accordingly, if in the course of attempting to demonstrate that a particular school district has achieved unitary status, we determine that it has not, then we will cease to seek unitary status, and indeed will seek instead to reactivate the case to achieve additional relief, as is necessary. As we have repeatedly pointed out in our earlier filings, while we think the law requires dismissal once unitary status *has* been achieved, we do not wish to see any school district released from judicial supervision that has *not* achieved unitary status.

In the interest of lessening the burden on all parties, we recommend that the cases be submitted by written record to the extent feasible. In particular, the United States will coordinate the response to the interrogatories already propounded by the plaintiffs and we will also make written requests of the school districts for any other information which we feel is relevant to the unitariness inquiry. As we noted in our earlier filings, however, in our view the ultimate burden of showing why the cases should not be dismissed is on plaintiffs. See, *e.g., Youngblood v. Board of Public Instruction of Bay County*, 448 F.2d 770, 771 (5th Cir.1971). Since the requests for information are extensive, it may be appropriate to waive the normal 30–day rule for responding to interrogatories, but we hope this will not be necessary. The school districts should in all events inform the Court and parties of the time needed to submit their answers or provide necessary data for review, and the parties should agree on a reasonably compact discovery schedule during which a written factual record will be developed for each school district.

We will consider all evidence of nonunitary status submitted by private plaintiffs, and hope that they will likewise consider whether in a given case it is truly in any-

one's interest for judicial supervision to continue indefinitely if it becomes clear that unitary status has in fact been achieved. Similarly, we hope that the school districts will play as active a role as they can in this matter. We continue to believe that the process of reviewing and, where appropriate, removing cases from the Court's docket can be a cooperative endeavor among the judge, the United States, private plaintiffs, and defendants. If private plaintiffs agree with the United States as to our determination of those school districts which have attained unitary status, we would then attempt to work out a mutually agreeable procedure for dismissing the case. If there is any disagreement, the United States would then move for a hearing on this issue and would assume all reasonable costs of any further discovery, prelitigation action, and trial necessary to our showing that these districts have achieved unitary status. Again, we offer two caveats: we do not read this Court's order as requiring us to pay private plaintiffs' costs, and if our analysis shows that any of the nine school districts have not complied with outstanding court orders, we will not proceed with that district, but will seek additional appropriate remedial measures.

We trust that this procedure comports with the concerns raised in your order and will be the least burdensome on the individual school districts while still allowing a determination of whether the school district has attained unitary status.

Sincerely,

(s) Roger Clegg
Roger Clegg
Deputy Assistant Attorney General
Civil Rights Division

cc: All Counsel